## HENRY D. DEBLOIS *v.* OLIVE B. EARLE.

The cardinal rule in the interpretation of all instruments, guaranties included, is, "to read the writing," and taking its language in connection with the relative position and general purpose of the parties, to gather from it, if you can, their intent in the questionable particular. If thus considered, its language is equally susceptible of either of two reasonable interpretations, that is to be adopted which makes most strongly against the maker of the instrument, or party using the ambiguous words ; and this rule, in application to guaranties, is quite compatible with another, that no one can claim under a guaranty, who does not bring himself fairly within its terms.

Where the plaintiff, in an indenture of lease, by the words,—"I agree to and with the said J. E. H. to lease to him,"—leased to J. E. H. certain premises, and by the same phrase agreed, in the same instrument, at the option of said J. E. H., to lease to him the premises for another year, upon the same terms and conditions, at a certain rent, payable at a certain time named in the lease ; and the defendant, by a covenant next following, in the instrument, the stipulation for another year, agreed, "that in case the said J. E. H. shall neglect or refuse to pay the aforesaid rent, in manner aforesaid, I will pay the same within ten days thereafter ;" *Held,* that the defendant's guaranty applied to the second year's rent as well as to the first.

COVENANT upon a sealed guaranty, to recover the rent of Concert Hall, in Newport, for the year ending the first day of May, 1858 ; said hall having been let by the plaintiff to one Hidden, at the rent of $200 *per annum.*

Plea, performance, and issue joined

A jury trial having been waived, the case was submitted to the court in fact and law; and it appeared, that on the first day of May, 1856, the plaintiff, by indenture of lease, executed by himself, on the one part, and by James E. Hidden and the defendant, on the other part, by the words,—" agrees to and with the said James E. Hidden to lease to him,"—leased to said Hidden, a certain hall, situated on Touro street, Newport, and called and known by the name of Concert Hall, for the term of one year, commencing on the first day of May, 1856, and terminating on the first day of May, 1857, at a rent of two hundred dollars, to be paid on the 20th day of September, 1856. The lease contained a covenant by Hidden, for the payment of the rent at the time mentioned, a covenant against waste, and that he would, at the end of the term unless his lease should be renewed, restore the premises to the plaintiff in like good order as when he received them, ordinary wear and damage by fire or other casualty excepted. It also contained a clause entitling the plaintiff to reënter and repossess himself of the leased premises, upon neglect or refusal of the tenant to comply with the covenants,—called conditions,—of his lease. The lease concluded with the two following clauses :—

" And it is further agreed between the parties, that in case the said James E. Hidden shall wish to hire the said hall for the year next after the termination of this lease, that the said Henry D. Deblois hereby agrees to lease the same to him on the same terms and conditions as herein before expressed, and the same sum for rent is to be paid on the 20th day of September, A. D. 1857.

" And I, Olive B. Earle, do hereby covenant and agree to and with the said Henry D. Deblois, his heirs and assigns, that in case the said James E. Hidden shall neglect or refuse to pay the aforesaid rent in manner as aforesaid, that I will pay the same within ten days thereafter; and for the payment of which I hereby bind myself, my heirs, executors, and administrators, to him, the said Henry D. Deblois, his heirs and assigns."

It further appeared, that Hidden entered into possession under this lease, and occupied, and paid the rent for the first year, as stipulated; and, electing, under the clause aforesaid, to continue his occupation for a second year, remained in possession without

any new lease; but having neglected to pay his rent for the second year, this action was brought to recover the same of the defendant under her above guaranty, demand having been made of her for the same after the expiration of ten days from the time said rent fell due.

*Tobey, with whom was T. A. Jenckes, for the plaintiff :—*

I. This is a lease for the second year, in case the lessee chooses to occupy under it, as he in fact did.· Whether an instrument of this general character is to be construed as a lease, or an agreement for a lease, depends upon what was the intent of the parties, to be gathered from the whole instrument. If they meant to treat it as a lease, courts will so construe it. Parsons on Contracts, vol. 2, p. 23 and n. 2 ; p. 25 and notes ; *Stratton* v. *Pettit,* 30 Eng. L. and E. 479, 484 ; *Poole* v. *Bentley,* 12 East. 167. The same words, agree to lease—to let, is used for first year, as for second year. The lessee stipulates that he will pay rent, the first year, on the 20th September, 1856, and, in case he occupies under the lease, the second year, on the 20th September, 1857. This defendant then stipulates in general terms, that in case the lessee does not pay *the rent* in manner as aforesaid, she will pay. Now what rent did she undertake, according to the fair construction of the language which she used, to see paid ? Was it not all the rent which the lessee had obligated himself to pay by the previous agreements of the lease ? *Salisbury* v. *Hale,* 12 Pick. 415.

II. If this instrument is not to be construed as a lease for the second year, in case the lessee should elect to occupy, then it is an *agreement for a lease,* which may be proved as not within the statute of frauds ; and in that view of the paper, the defendant is liable not only for the rent of the term of this lease, but also for the rent of the term of the contemplated lease, after May 1, 1857. It was perfectly competent for her to make such a contract. It was the consideration, on the one hand, of the actual lease executed at the time, and, on the other, of the agreement to lease which was executed at the same time and contained in the same instrument. The defendant knew that a further lease was not only contemplated between the parties, but that an agreement to that effect was embraced in the instrument which she was ex-

ecuting. That agreement immediately precedes the clause containing the covenant on the part of the defendant. She uses language broad enough to include the rent which should accrue during both years.

III. Whichever construction is given to the instrument, the words of guaranty are a continuing guaranty, and must be taken most strongly against the person using them. *Mason* v. *Pritchard*, 12 East. 227 ; 2 Camp. 436 ; *Merle* v. *Wells*, 2 Camp. 413 ; *Rapelye et al.* v. *Bailey*, 5 Conn. 149, 153 ; *Mayer* v. *Isaac*, 6 M. & W. 605, 612.

IV. Whether this instrument was a lease or only an agreement for a lease, as respects the second year, the guaranty of the defendant was upon sufficient consideration for both years. *Caballero* v. *Slater*, 25 Eng. L. and E. 285 ; *Leonard* v. *Vredenburgh*, 8 John. 29, 31 ; *Bailey* v. *Freeman*, 11 John. 221.

*Payne & Colwell, for the defendant :—*

I. This was a lease for one year and no longer, at least as between the lessor and the defendant, as guarantor of the rent. There is not only no letting for the second year, but no obligation on the part of the tenant to keep it for another year ; it being left optional with him whether he would do so or not, under the plaintiff's covenant for a renewal. Hidden was a tenant by parol only, for the second year. *Brewer* v. *Knapp*, 1 Pick. 332.

II. The defendant's guaranty must be confined to the year of actually letting, since it was only in the event of *the neglect of Hidden to pay* the rent, that the defendant's liability accrued, and Hidden was under no obligation to pay rent, nor was there any covenant on his part to pay it, for the second year, at the time the guaranty was entered into. The words of the guaranty are, to pay the aforesaid "rent," and not "rents," as if for two years ; and it can hardly be presumed that the defendant would leave it optional with the tenant to bind her, for another year, for his rent. He who claims under a guaranty must, to recover, bring himself strictly within it. *Miller* v. *Stewart and others*, 9 Wheat. 681.

AMES, C. J. The cardinal rule in the interpretation of all instruments, guaranties included, is " to read the writing," and, taking its language in connection with the relative position and

general purpose of the parties, to gather from it, if you can, their intent in the questionable particular. If thus considered, its language is equally susceptible of either of two reasonable interpretations, that is to be adopted which makes most strongly against the maker of the instrument, or party using the ambiguous words; and this rule, in application to guaranties, is quite compatible with another, that no one can claim under a guaranty who does not bring himself fairly within the terms of it.

Applying these rules to the instrument before us, we find but little difficulty in ascertaining the meaning and extent of it. It is quite evident, that the plaintiff would not let his hall to Hidden without some other assurance for the payment of the rent than the personal covenant of the tenant, though coupled with a right to reënter for non-payment. No one could have known this better than the defendant, who had consented to guaranty the payment of it. The lease, it is true, is but for one year; but with a right in the tenant, at his option, to remain another, upon the same terms and conditions, and at the same rent, payable on a day certain named in the instrument. We are satisfied that the parties did not, in case the tenant should avail himself of this right, contemplate the execution of another instrument, but intended that this should answer, as it has answered, the purpose for the second, as well as for the first year. The terms of letting for the second year are as definitely set down in it as for the first; and the same expression,—" agrees, to and with the said James E. Hidden, to lease to him," &c.,—is used by the plaintiff to signify the nature of his contract with Hidden as to both years of his contemplated occupation of the premises. The covenant of the defendant directly follows the clause giving the tenant an option to occupy, for another year, upon the same terms and conditions as for the first, the amount of the rent and the day for the payment of it being expressly named. The words employed by the defendant in this covenant,—" that in case the said James E. Hidden shall neglect or refuse to pay *the aforesaid* rent in manner as aforesaid, that I will pay the same,"—applies equally to all the rent before mentioned as to any part of it; as well to the rent for the second year, if the tenant should elect to occupy, as to the rent for the first year.

It is said, that the defendant can hardly be supposed to have designed to guaranty this rent for the second year, *at the option* of the tenant. The same motive which induced her to guaranty it for the first, would, for aught that appears, be sufficient to induce her to go farther for the person whom she thus befriended. But would the plaintiff, who required the tenant to give security for the first year's rent, positively and unequivocally agree, that he should remain another, without any security? Yet, this would be the result, if we confine the guaranty of the defendant to the payment of the first year's rent! It is, in our view, far more consonant with the probable intent of the parties, to suppose, that the guaranty was designed to accompany both years of the tenant's contemplated occupation. Judgment must, therefore, be entered for the plaintiff for the sum of $200, being the second year's rent, with interest from the 1st day of September, 1857, the day named in the indenture for its payment.