EDITH L. GILMAN *vs.* MICHAEL J. MURPHY.

JULY 11, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.   This bill in equity for specific performance was brought by the complainant vendor to compel the respondent vendee to perform a contract for the purchase of certain real estate.  The cause was heard in the superior court on bill, answer and proof.  It is before us on respondent's appeal from a final decree granting the prayer of the bill. The reason of appeal is that the decision of the trial justice is erroneous and against the law.

It appeared in evidence that the complainant was the owner of three lots of land with two houses thereon in the city of Cranston.  She listed one of these houses for sale with a Providence real estate agent, who interested the respondent in its purchase.  At the very beginning of their dealings and before the signing of any contract, the respondent made it clear to the agent that he was in no position to buy the property in question unless he could raise a substantial mortgage, the amount not being specified, on that property.  This was admitted by the agent, who further admitted that he promised to help the respondent in raising such a mortgage. "Mr. Murphy had asked me what could be done in the way of financing this property, and we had talked over several possible methods of just how to finance it, . . . and I left it that as soon as he was ready, willing and able to make his definite commitment, that this office would immediately proceed to

help him along in the financing of the house . . . ." By the term "definite commitment" in the language just quoted the agent meant the signing of an agreement to purchase the property and putting "some money down on the deal." The evidence is clear that the respondent relied upon the above representation of complainant's agent when the former, a few days later, signed an agreement to purchase the property.

The original contract between the parties, dated April 9, 1940, is on a printed form of complainant's agent. The premises to be conveyed, upon which the complainant undertook to build a one-car garage at her expense, are described as "located on the south side of Glen Ave., Cranston, R. I. and further known as number 48, said lot having an area of approximately 7750 sq. ft." The purchase price was to be $8200, and the deed was to be delivered at the city hall "on or before 5-11-40 at 4 p. m." The respondent paid complainant's agent $100 when this contract was signed, such payment being subject to a stipulation hereinafter quoted and considered. Nothing was done under this contract.

On May 13, 1940 the parties signed the contract which is the basis for these proceedings. It is similar in all respects to the first contract, except that the deed was to be delivered at the city hall on or before June 1, 1940, at 4 p. m. and that the area of the premises was stated as "approximately 7500 sq. ft." No money was paid by respondent on this contract.

The complainant's agent testified that the difference in the two contracts respecting the area of the premises to be conveyed was due to an error of recollection on his part, as he did not refer to the original contract when he drew the second contract. He also testified that the latter contract was entered into as an accommodation to the respondent, who asked for more time because of his wife's illness. This was denied by the respondent. He claimed that he was led to sign the second contract because complainant's agent "seemed to be very anxious to keep the case open, . . . that it was more for his (the agent's) benefit to keep the case alive . . . ."

The evidence is clear that the complainant could not have performed the first contract at the time therein specified, notwithstanding her agent's testimony in direct examination that, as far as he knew, she was ready and willing to carry out that contract on such date. In contrast to such testimony, complainant's husband testified that construction of the garage called for by the contract did not begin until after the second contract was signed. This fact was not specifically denied. The necessary work in connection with the building of the garage was not completed until June 3, 1940.

On May 29, 1940 complainant notified the respondent by mail that she would be at the city hall in Cranston on June 1, 1940, at 11:30 a. m., ready to deliver a deed "as per agreement". The respondent did not comply with this notice. The premises described in the deed which the complainant had executed for delivery at that time showed an area of 8050 square feet.

The undisputed evidence is that the complainant, through her agent, represented to the respondent before he signed the contract that she would assist him to secure the necessary mortgage, so that he might carry out the contract. It also appears, by the same kind of evidence, that the only help which the complainant or her agent gave to the respondent in this matter was to furnish him with an application for a mortgage from the Peoples Savings Bank. There is no evidence that this bank had promised any one to take the necessary mortgage on the property in question. Furthermore, there is no allegation in complainant's bill, and there is no evidence that, at the time set for performing the contract, the complainant was herself or through others ready and willing to provide the necessary mortgage, thus showing her good faith by attempting to carry out the representation of her agent that induced the respondent to sign the contract.

It also appears from undisputed evidence that the respondent in good faith applied for a mortgage from the Old Colony Cooperative Bank. He testified, without contradiction, that the mortgage which this bank was willing to take,

following an appraisal of the property, was not sufficient to enable him to perform the contract.

The cause before us presents an unusual situation, and therefore should not be confused with those cases that involve mere mutual promises to buy and sell real estate. Here we have a contract which is based upon a specific and material representation by the seller, through her agent, upon which the respondent had a right to rely. Since the respondent was induced to sign the contract in reliance on such representation, it was incumbent upon the complainant, seeking affirmative relief by specific performance, to carry out that representation in a substantial manner, and not by way of mere token, such as giving the respondent an application for a mortgage from a certain bank and doing nothing more. From the very inception of the transaction she knew, through her agent, that the respondent could not perform the contract unless he was able to raise the necessary mortgage on the property in question; and yet, notwithstanding the representation which led the respondent to sign the contract, she or her agent did no more "to help him (the respondent) along in financing the house" than what we have already stated.

The stipulation hereinbefore mentioned, relating to the $100 that the respondent paid complainant's agent, is as follows: "5) On default by the Buyer, the binder shall be retained by the Seller, but if the Seller shall be unable to make conveyance as above stipulated, then the binder shall be returned, and all obligations shall cease: . . . ."

The complainant and the respondent are in complete disagreement as to the meaning and effect of this stipulation in the special circumstances of this cause. The complainant, adhering strictly to the language of the printed contract and disregarding the material representation that complainant's agent made to the respondent before the latter signed the contract, contends that the $100, which her agent received from the respondent, was merely a penalty which she could retain upon respondent's default, without in any

way affecting her rights under the contract. She argues that the clause "and all obligations shall cease" at the end of the stipulation refers only to the reservation therein in favor of the seller.

The respondent, on the other hand, contends that the stipulation, when read as a whole and with due regard to the undisputed evidence of inducement held out to him by complainant's agent and upon which he relied when he signed the contract, shows that the clause in question applies to a default by the buyer as well as to a default by the seller. He therefore argues that, in the special circumstances of this cause, the said sum of $100 was not a penalty, but a sum fixed by the parties to be retained by the seller as liquidated damages if the buyer breached the contract.

The transcript before us shows that these basic contentions were clearly raised in argument and by briefs before the trial justice. Yet his rescript thereafter filed, in which he makes certain findings of fact, is completely silent on this important point. In this situation, we will first consider the stipulation in question, and then point out that the trial justice failed to consider certain relevant and undisputed evidence, which, if not overlooked, would have entitled the respondent to a decision in his favor.

The stipulation under examination is ambiguous and requires construction. It consists of one sentence, with commas as the only punctuation in the body thereof. The clause in question here, which follows a comma and completes the sentence, may well refer to *both buyer and seller*. The language and punctuation are the complainant's, through her agent. It was within her power to express the meaning, for which she now contends, in clearer, if not unmistakable, terms. As the stipulation was drawn by complainant's representative, it is to be construed more strongly against her. *Deblois* v. *Earle*, 7 R. I. 26; *Marcaccio* v. *Santurri*, 51 R. I. 440.

Whether a contract gives a party the option of performing or of paying certain damages is a question of intention

to be determined from a construction of the instrument in view of the circumstances in each case. Keeping in mind the peculiar circumstances under which the respondent in the instant cause was induced by complainant's agent to sign the contract, it is our opinion that complainant's construction of the stipulation is unreasonable. We do not think that complainant's agent intentionally sought to mislead the respondent. At the same time, we do not believe that the respondent, who had disclosed to complainant's agent his need of financial assistance by way of mortgage before he could carry out his contract, and who had been promised "help . . . in the financing of the house" by such agent, ever intended that the stipulation under consideration should enure solely to the benefit of the seller in case of default by him, the respondent, because of inability to secure the necessary mortgage.

The special circumstances in this cause require that the ambiguous language of the stipulation be so construed as to carry out the common understanding of the parties when the contract was signed. Construing that language most strongly against the complainant, whose agent used such language, we are of the opinion that the stipulation in question is alternative in character and provides for the termination of the contract if, for justifiable cause, either buyer or seller breached the contract.

No case exactly in point has been cited to us, nor have we found any. The complainant argues that this cause is governed by *Dike* v. *Greene,* 4 R. I. 285 and *Paolilli* v. *Piscitelli,* 45 R. I. 354. She also relies on *Margolis* v. *Tarutz,* 265 Mass. 540, in which the court cites as authority *Old Colony Trust Co.* v. *Chauncey,* 214 Mass. 271, and *Buckley* v. *Meer,* 251 Mass. 23. All these cases are clearly distinguishable in their facts from the instant cause. In none of them was the contract under consideration induced by any representations, nor was the stipulation in question the same as the one before us. We consider these cases

inapplicable in the special circumstances of the instant cause.

A bill for specific performance is an application addressed to the judicial discretion of a court of equity to be exercised on equitable considerations in view of all the circumstances of the cause. *Smart* v. *Boston Wire Stitcher Co.,* 50 R. I. 409, 417; *Ball* v. *Milliken,* 31 R. I. 36, 46; Pomeroy, Specific Performance of Contracts, (3rd. ed.) § 35. Even if the complainant's construction of the stipulation were adopted, she would not be entitled to a decree of specific performance in the circumstances clearly established by the evidence before us, as she herself failed to do equity. The representation by complainant's agent that led to the signing of the contract by the respondent cannot be waived aside as immaterial in equity. The complainant was obligated thereby, in justice and fairness, to give the respondent real help in securing the necessary mortgage. Other than providing him, through her agent, with an application for a mortgage from a certain bank, she did nothing to assist him in this respect, and she herself never offered to take back the necessary mortgage as part of the purchase price, when she demanded that the respondent perform the contract.

Furthermore, if it were necessary to examine the findings of fact by the trial justice in order to determine whether he was warranted in decreeing specific performance of the contract in these special circumstances, his rescript clearly shows that he failed to consider the following relevant facts: (1) The premises described in complainant's deed were different, at least in area, from the description of the premises appearing in either of the two contracts hereinbefore described; (2) the complainant saw fit to demand performance of the contract upon which she relies in this cause at 11:30 a.m., June 1, 1940, when its terms gave respondent until 4 p.m. on that date to perform, if he could; and (3) there was still work to be done by the complainant in connection with the garage when she demanded that

the respondent perform the contract. Had the trial justice given due consideration to these cumulative circumstances, in the light of the failure of complainant to substantially fulfill her agent's representation which induced the respondent to sign the contract, he should have refused to decree specific performance of that contract, even though he failed to construe the stipulation as we have construed it.

The appeal of the respondent is sustained; the decree appealed from is reversed; and the cause is remanded to the superior court with direction to enter a final decree dismissing the bill.

Moss, J., dissenting. I feel obliged to dissent from the foregoing opinion, the principal reason being that I cannot agree with the construction given by the majority of the court to clause 5 of the contract upon which the suit is based.

According to the law applicable to suits in equity for the specific performance of contracts for the sale and purchase of real estate, as laid down in decisions, if such a contract provides for the payment of a binder by the vendee to the vendor and then a clause provides that if the vendee defaults on the contract the binder shall be retained by the vendor, the construction of such clause is well settled, in the absence of something in the contract requiring it to be construed differently. That construction is that such a binder will not be treated as liquidated damages and will not interfere with the maintenance of a suit by the vendor against the vendee for specific performance of the contract.

The construction to be given to the second part of clause 5 in the contract governing the rights of the parties in the instant cause is also well settled. Equivalent provisions have been construed in a series of Massachusetts suits by vendees to enforce specific performance by vendors; and I have found no authority to the contrary. *Old Colony Trust Co.* v. *Chauncey*, 214 Mass. 271; *Buckley* v. *Meer*, 251 Mass. 23; *Margolis* v. *Tarutz*, 265 Mass 541.

In each of those cases a suit in equity was brought by the vendee to compel specific performance, by the vendor, of a contract for the sale of certain real estate and its conveyance by a deed conveying a good and clear title thereto; and this contract contained the provision, or its equivalent, that "if the vendor shall be unable to give title or to make conveyance as above stipulated, any payment made under this agreement shall be refunded and all other obligations of either party hereunto shall cease and this agreement shall be void without recourse to either party . . . ."

In each of the first two cases above cited it was held that if the vendor's title proved to be defective, the vendee could not maintain a suit in equity against the vendor to compel him to acquire any outstanding interest and convey a perfected title to the vendee. In the former of the two cases the court said at page 273: "This clause means that if it turns out that without fault on the part of the defendants subsequent to the execution of the contract they have a defective title, then, after refunding payments made, all obligations of both parties shall cease." In the second of the three cases above cited the court laid down and applied the same doctrine.

In the third of these cases the contract contained a similar provision and the suit in equity for specific performance was brought by the vendee. But there the court found that the vendor's failure to make conveyance as agreed was not without fault on her part and that "she intentionally neglected and failed to carry out her part of said agreement". It was held that, under these circumstances, the provision as to the termination of all obligations did not relieve her of her obligation to perform; and that the vendee could, at his election, compel her to perform, so far as she could, by conveying the title which she had, with a reasonable deduction from the purchase price by reason of the defect in title.

The second provision in clause 5 of the contract involved in the instant cause is practically the same as the provision

involved in each of the cases above cited; and I can see no reason why it should not be construed in the same way, the emphasis being on the words "if the Seller shall be *unable* to make conveyance as above stipulated". (italics mine) This clearly excludes a case in which the vendor has committed a default in not performing the contract, although he was able to make the stipulated conveyance.

On the other hand, the language of the first part of this clause 5, *viz.*: "On *default* by the Buyer, the binder shall be retained by the Seller", (italics mine), is entirely consistent with the language of the second part; and, by well-settled authority, leaves the vendor free to bring a suit in equity against the defaulting vendee, for specific performance of the contract.

It is held, however, in the opinion of this court in the instant cause, that clause 5 should be construed just as if the words "and all obligations shall cease", which are at the end of the whole clause, were also inserted at the end of the first part of the clause, so that that part would read as follows: "On default by the Buyer, the binder shall be retained by the Seller and all obligations shall cease." In my judgment, that construction is not a reasonable one.

In the first place, it is, to my mind, a very unreasonable one, considered simply from the standpoint of the grammatical construction of the language. Secondly, it seems to me that it is unreasonable to so construe a contract, unnecessarily, as to leave the vendee in such a position that he would be free to default on performance of his part of the contract, without any cause or excuse whatever, under the sole penalty of losing his deposit of $100 out of the total purchase price of $8200, while the vendor would be bound, unless, without fault on her part, she could not make the stipulated conveyance. Thirdly, such a construction seems to me still more unreasonable on account of the facts that by the terms of the contract the vendor was to erect, on the land sold and at her own ex-

pense, a garage for the use of the vendee and that she did so erect one at an expense of several hundred dollars.

Taking these matters into consideration, I am of the opinion that even after giving the respondent all reasonable benefit resulting from the fact that the contract was drawn by a real estate broker who was acting on behalf of the complainant, the contract should not be so construed as to enable the respondent to avoid specific performance of it, even though, after causing the complainant to incur an expense of several hundred dollars on the premises in accordance with the contract, he had refused to perform it without any just cause or excuse.

After an examination and consideration of all the evidence in this cause, I am convinced that the findings of the trial justice, in his decision, that the complainant had substantially complied with her contract and "that the only reason that respondent failed to go through with the purchase of the property was that his wife had changed her mind", and also all his other findings of fact therein, were supported by the evidence.

As to the matter of procuring a mortgage loan on the property, one of the complainant's agents testified, without contradiction, that he took the matter up with the Peoples Savings Bank and procured there a regular application form, complete except for the respondent's signature; that he handed it to the respondent; and that all the respondent had to do was to sign it. The latter testified that he received this application from this agent; that the latter kept asking him to sign it and send it in; but that he had never done so.

It is my opinion that the appeal should be denied and that the decree of the superior court, in which these findings were incorporated and specific performance by the respondent was ordered, should be affirmed.

*Voigt, Wright, Munroe & Clason, Clifton I. Munroe,* for complainant.

*McKiernan, McElroy & Going, Peter W. McKiernan, John C. Going, John S. McKiernan,* for respondent.